Robert M. Libbey
Robert M. Libbey Law Office
14901 Wildien Drive
Anchorage, Alaska 99516
bob@libbeylaw.com
Telephone (907) 345-3083
Fax (907) 345-3083
Attorney for Plaintiffs

William H. Ingaldson
Ingaldson Fitzgerald, P.C.
813 W. 3rd Avenue
Anchorage, Alaska 99501
bill@impc-law.com
Telephone (907) 258-8750
Fax (907) 258-8751
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

MYRNA SAGOONICK, ALLEN SAGOONICK and MURIEL SAGOONICK,

Plaintiffs,

v.

UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, INDIAN HEALTH SERVICE and CHUGACH-MUIT, INC., d/b/a NORTH STAR HEALTH CLINIC,

Defendants.

Case No. _____

# COMPLAINT

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

1

Case 3:17-cv-00052-SLG   Document 1   Filed 03/14/17   Page 1 of 13

## Jurisdiction

1. This case is brought pursuant to Federal Tort Claims Act, 28 U.S.C. § 671, and the Fourth and Fifth Amendments to the United States Constitution, 28 U.S.C. § 331 and 1346(b). Jurisdiction over the parties is also founded in Public Law 101-512, Title III, section 314; 25 U.S. Code § 450f.

2. On December 6, 2013, Plaintiffs submitted Administrative Claims (Standard Form 95) for the claims set forth below to the U.S. Department of Health and Human Services, Indian Health Service, with copies to the U.S. Department of Justice, and Chugachmuit, an Alaska Native Corporation, dba North Star Health Clinic.

3. In a letter dated January 8, 2014, the receipt of Plaintiffs' claims was acknowledged by the U.S. Department of Health and Human Services, in a letter wherein the agency requested additional information and documentation ("substantiating evidence") of the claims.

4. In a letter dated January 16, 2014, the receipt of Plaintiffs' claims was acknowledged by the U.S. Department of Justice, and Plaintiffs were instructed to direct all further communications in negotiation to the U.S. Department of Health and Human Services.

5. Over several years since the filing of the Standard Form 95s, Plaintiffs have diligently continued to comply with the request for additional "substantiating

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

2

evidence" by securing and providing additional information and documentation in support of their claims to the U.S. Department of Health and Human Services.

6. On July 15, 2016, with the transmission of yet additional claims support information and documentation, Plaintiffs forwarded to U.S. Department of Health and Human Services *amended* Administrative Claims (Standard Form 95). These forms were required to conform the claims with some of the "substantiating evidence" that was discovered by Plaintiffs after the original Forms had been submitted.

7. With the submission of this additional information and documentation, Plaintiffs expressly requested a decision on their claims from the U.S. Department of Health and Human Services.

8. Plaintiffs allege and believe that by their submissions to date, they have substantially complied with the request for substantiation requested by the U.S. Department of Health and Human Services, and required by law, given the unique circumstances of this medical incident.

9. More than six months have passed since Plaintiffs' amended Administrative Claims of July 15, 2016 were submitted, along with Plaintiff's request for a decision on the claims, and all other conditions precedent to filing of a Federal Tort Claims Act claim have been reasonably met.

## Parties

10. Plaintiffs are residents of the Fourth Judicial District, State of Alaska, and

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

3

at all times have been qualified for medical care from the Indian Health Service, and accordingly, from Chugachmiut, Inc., an Alaska Native corporation, that is compacted with the Indian Health Services, in the operation of North Star Health Clinic in Seward, Alaska.

11. All Defendant entities are appropriate parties to this civil action lodged in Alaska, under the Federal Tort Claims Act, pursuant to Public Law 101-512, Title III, section 314; 25 U.S. Code § 450f, and under the compact entered into between the Indian Health Service and Chugachmiut, Inc. for the operation of North Star Health Clinic in Seward, Alaska.

## Facts

12. Plaintiff Myrna Sagoonick (hereinafter Myrna) is a Yupik woman, born in 1965, who has lived in western Alaska nearly her entire life, and who presently lives in Unalakleet, Alaska.

13. Plaintiff Allen Sagoonick (hereinafter Allen) is a Yupik man, born in 1965, who at all times relevant hereto has been the husband of Plaintiff Myrna Sagoonick, and who shares a residence with her in Unalakleet, Alaska.

14. Plaintiff Muriel Sagoonick (hereinafter Muriel) is the daughter of Myrna and Allen Sagoonick, was born in 1996, and currently resides with her parents.

15. Myrna developed grand mal seizure disorder sometime in 1981.

16. Thereafter, control of Myrna's seizures was established with the

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX. (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

4

administration of phenytoin, brand name Dilantin.

17. In December of 2001, following two years of freedom from grand mal seizures, Myrna's Dilantin therapy was discontinued by her treating physician.

18. Myrna suffered no grand mal seizures during the following ten years, during which she was not taking Dilantin or any other anticonvulsant medication.

19. Myrna had developed pain and stiffness in the joints of her upper extremities which, by at least the year 2000, had been diagnosed as symptoms of rheumatoid arthritis. Her symptoms were reasonably controlled with continued administration of methotrexate and folic acid, occasionally supplemented by various analgesics for pain flare-ups.

20. In May of 2011, the plaintiffs moved to Seward, Alaska, where Plaintiff Allen Sagoonick had obtained employment.

21. Shortly after moving to Seward, Myrna registered as a patient at the Chugachmuit Health Clinic doing business in Seward as North Star Health Clinic; which was at all times relevant hereto, operated in a partnership or compact relationship with the U.S. Indian Health Service, U.S. Department of Health and Human Services.

22. On or about November 18, 2011, at the North Star Health Clinic, Myrna was given a prescription for tramadol, brand name Ultram, in oral 50 mg tablets, dosage 1 tablet every 12 hours, for flare-ups of her left wrist and elbow pain that was associated with her arthritis. On information and belief, the prescription was authorized for Myrna

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

5

by David K. Zetterman, M.D., or Cynthia Langmade, PA-C, NP. Those persons who issued this prescription for Myrna were acting in the course and scope of their employment with North Star Health Clinic, and were thereby acting as employees of the United States of America.

23. At the time this prescription was issued to Myrna, both official and industry warnings had been issued against the prescription of tramadol, for a patient with a history of seizure disorder, because the use of the drug in that population had been found to precipitate the return of seizure disorder. Those warnings also noted that administration of tramadol, even within the recommended dosage range, could precipitate seizure, and that the risk increased when tramadol was administered above the recommended range.

24. While official and industry recommendations at that time urged starting of Tramadol at the lowest possible dose, followed by titration upward over days, to increase the patient's tolerance for Tramadol, no such titration plan was incorporated by North Star Health Clinic personnel, and Myrna was started on a dosage above the recommended range.

25. North Star Health Clinic personnel also ignored the official and industry admonishment that tramadol was contraindicated for patients, like Myrna, with a medical history of hypersensitivity to the drug.

26. On December 8, 2011, the pharmacy at Alaska Native Medical Center, in

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

6

Anchorage, Alaska, filled the prescription that personnel at North Star Health Clinic had given to Myrna, for oral 50 mg tramadol tablets.

27. On or about December 12, 2011, as a result of a flare up of her arthritic wrist and elbow pain, Myrna began to take her oral 50 mg tramadol tablets.

28. On the afternoon of December 13, 2011, Myrna suffered a grand mal seizure, for which she was transported to the emergency department of Seward Providence Medical Center in Seward, Alaska.

29. Shortly after being admitted to the Seward Providence Medical Center emergency department, Myrna suffered a second grand mal seizure.

30. During her care at the Seward Providence Medical Center emergency department, on December 13, 2011, Myrna was restarted on phenytoin, for seizure control, and was given a prescription by Dr. Jerald Flynn for the continued use of phenytoin in the specific oral dosage of 100 mg, three times daily.

31. On December 16, 2011, Myrna was seen at the North Star Health Clinic, by David K. Zetterman, M.D., her primary care giver, for follow-up of the seizures she had suffered on December 13, 2011. On that visit, Dr. Zetterman approved for Myrna a phenytoin dosage of 50 mg, three times daily, a dose substantially below that used in the standard of practice, not justified by the patient's weight and not assessed by determining her serum phenytoin level.

32. Though Myrna's current medications continued to include tramadol, at the

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

time she was seen by David K. Zetterman, M.D., on December 16, 2011, no order was entered to discontinue tramadol, nor was Myrna advised at the time not to take any more of her tramadol.

33. Those involved in Myrna's care on December 16, 2011, were acting in the course and scope of their employment with North Star Health Clinic, and were thereby acting as employees of the United States of America.

34. Between December 17, and December 22, 2011, while she was in Anchorage, awaiting a follow-up with a neurologist, Myrna suffered at least seven additional grand mal seizures, for which she was taken to the Emergency Department at Alaska Native Medical Center.

35. While Myrna remained in the Emergency Department at Alaska Native Medical Center, on December 17, 2011, when it was discovered that she had been taking tramadol tablets during the past week, her tramadol tablets were taken from her, her tramadol prescription was discontinued, and she was instructed never again to take tramadol.

36. While Myrna remained in the Emergency Department at Alaska Native Medical Center, on December 17, 2011, it was also discovered that her blood concentration of phenytoin was at a sub-therapeutic level. Her phenytoin dosage was therefore increased.

37. On December 22, 2011, having had three additional grand mal seizures

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

8

earlier that day, Myrna was returned to the Emergency Department at Alaska Native Medical Center, where her blood was again found to contain a sub-therapeutic concentration of phenytoin. Her phenytoin was again increased, and Keppra was added.

38. During ensuing months, continued phenytoin administration brought Myrna's grand mal seizures under reasonable control, but by then she had developed complex partial seizures.

39. Since 2012, with some adjustments to dosage, Myrna's grand mal seizures have been kept under reasonable control. Her complex partial seizures were eventually brought under control by the additional administration of valproic acid.

40. On August 12, 2014, an EEG obtained at ANMC demonstrated brain waves of epileptogenic configuration were occurring in the left parietal region of Myrna's brain.

41. Breakthrough complex partial seizure have periodically continued for Myrna, impairing her ability to enjoy a normal life, to obtain and hold employment, and participate in some family support activities, including subsistence resource gathering.

42. The very danger of precipitating a grand mal seizure, by stressful or physically demanding activity, has also inhibited Myrna from fully participating in activities, including subsistence resource gathering, where a seizure would have placed her at risk of serious injury or death.

43. Myrna has suffered pain, anxiety, mental anguish and embarrassment as a

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

result both of the return of her active epilepsy, and of the side effects of her medications for controlling her various seizures.

44. Under Alaska law, the actions alleged above, by those medical provider's at North Star Health Clinic who introduced and prolonged the administration of tramadol to Myrna, legally caused the return of her seizure disorder and breached the standard of care required by law of those care givers who treated Myrna at North Star Health Clinic.

45. Under Alaska law, the actions alleged above, of those medical provider's at North Star Health Clinic, which resulted in delay in establishing of therapeutic levels of phenytoin in her blood, legally caused her additional seizure activity, and breached the standard of care required by law of the care givers who treated Myrna at North Star Health Clinic.

## First Cause of Action

46. Plaintiff Myrna Sagoonick (Myrna) incorporates into this claim all allegations asserted above.

47. As a result of the return of her seizures Myrna now suffers continual physical symptoms, memory loss and deficiency, emotional distress, family, social and economic problems and limitations, including those within her role in the provision of family subsistence resources.

48. Myrna is now at increased risk for serious permanent injury, depression,

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

anxiety, self-inflicted injury and diminished life expectancy, from further seizure activity, and from the side effects of the seizure control drugs she must use.

49. Myrna has lost the capacity to participate normally in her marriage with Allen Sagoonick and in her parental relationship with Muriel Sagoonick.

50. As a result of the foregoing allegations, Myrna is entitled to an award of damages, past and future, in a sum to be proven at trial.

## Second Cause of Action

51. Plaintiff Allen Sagoonick (Allen) incorporates into this claim all allegations asserted above.

52. As a result of his wife's seizures, and of his need to care for and protect her, and to assist her in getting care and treatment, and in fulfilling some of her household and parental duties, Allen has suffered pain, fear and anxiety, has lost employment opportunities, has incurred direct travel, food and lodging expenses, and has suffered impairment of his ability to provide subsistence resources for his family.

53. As a result of his wife's seizures, and the effects of her treatment for the prevention of them, Allen has suffered a loss of the companionship, love, affection, support, and other spousal consortium with his wife.

54. As a result of the foregoing allegations, Allen is entitled to an award of damages, past and future, in a sum to be proven at trial.

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

11

### Third Cause of Action

55. Plaintiff Muriel Sagoonick (Muriel) incorporates into this claim all allegations asserted above.

56. As a result of her mother's seizures, and the effects of her treatment for the prevention of them, Muriel has suffered a loss of the companionship, support, training and other family consortium with her mother.

57. As a result of the foregoing allegations, Muriel is entitled to an award of damages, past and future, in a sum to be proven at trial.

### Prayer for Relief

Wherefore, the plaintiffs request that judgment be entered, to each plaintiff separately, for compensatory damages, the precise amount to be proven at trial, plus allowable costs, interest and attorney fees.

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

12

Dated this 13th day of March, 2017.

INGALDSON FITZGERALD, P.C.
Attorneys for Plaintiffs

By: s/William H. Ingaldson
William H. Ingaldson
ABA No. 8406030

ROBERT M. LIBBEY LAW OFFICE
Attorneys for Plaintiffs

By: s/Robert M. Libbey
Robert M. Libbey
ABA No. 6404014

F:\W\5257.001\Pleading\Complaint.doc

INGALDSON
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Sagoonick v. U.S.A. et al
Case No. _____
COMPLAINT

13

Case 3:17-cv-00052-SLG   Document 1   Filed 03/14/17   Page 13 of 13